UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FRANK L. SCOTT, individually and on behalf of others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:07-0512 ) JUDGE ECHOLS |
| VANDERBILT MORTGAGE AND FINANCE, INC., | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM

Pending before the Court is Defendant's Motion To Dismiss (Docket Entry No. 23), to which Plaintiff Frank L. Scott filed both a Response (Docket Entry No. 31) and Plaintiff's Supplemental Memorandum in Opposition To Defendant's Rule 12(b)(6) Motion to Dismiss (Docket Entry No. 32), and Defendant filed a Reply (Docket Entry No. 35).

## I. FACTS

Plaintiff is a South Carolina citizen. Defendant Vanderbilt Mortgage and Finance, Inc. ("Defendant") is a corporation organized under the laws of Tennessee with its principal place of business located in Tennessee.

On March 14, 2002, Plaintiff purchased in South Carolina a 1999 Oakwood manufactured home pursuant to a "Retail Installment Contract South Carolina" ("the contract"). (Docket Entry No. 1, Complaint ¶ 12, Ex. A.) The seller was Oakwood Acceptance Corporation, LLC, Greensboro, North Carolina. The contract provided: "The law of South Carolina, and including the South Carolina Uniform Consumer Protection Code, will govern this transaction. It is also governed by applicable federal law and regulations." (Ex. A at 4.) The manufactured home was located at

1

356 Dunmeyer Hill Road, Summerville, South Carolina. The contract was later assigned to Vanderbilt.[2] (Docket Entry No. 24, Ex. F.)

Plaintiff failed to make payments on the contract when due. Plaintiff filed a Chapter 13 bankruptcy petition in a South Carolina bankruptcy court on December 23, 2002. (Docket Entry No. 24, Ex. C.) Plaintiff listed the manufactured home on Schedule B - Personal Property and claimed an exemption of $5,000 under South Carolina law. (Id., Ex. E.) When Plaintiff failed to make payments pursuant to his Chapter 13 Plan, Vanderbilt obtained an unopposed order from the bankruptcy court lifting the automatic stay so Vanderbilt could pursue its state-law remedies. (Id., Exs. F & G.) Vanderbilt then filed a claim and delivery action in South Carolina state court. (Id., Ex. H.) When Plaintiff did not file an answer or otherwise plead, the state court entered default Judgment For Claim and Delivery. (Id., Ex. I.) The Judgment preserved Vanderbilt's right to a deficiency including all expenses of collection plus legal fees and costs. (Id.)

Vanderbilt repossessed the manufactured home on February 8, 2005. (Complaint ¶ 13.) On February 21, 2005, Vanderbilt sent a "Notice of Private Sale" to Plaintiff at his South Carolina address. (Id. at ¶ 14 & Ex. B.) This notice was printed on letterhead identifying Vanderbilt's Greensboro, North Carolina office address and telephone numbers. The notice informed Plaintiff, among other things, that Vanderbilt intended to sell his manufactured home at private sale "3/03/05, after 11:00 AM." The manufactured home was sold in South Carolina on or about March 10, 2005. (Id. at ¶ 15.).

On May 11, 2007, Plaintiff filed this purported nationwide class action lawsuit in this Court claiming that Vanderbilt's "Notice of Private Sale" was deficient under Article 9 of the Uniform

---

[2]The Court may take judicial notice of prior pleadings and proceedings when considering a motion to dismiss for failure to state a claim. See Charter Oak Fire Ins. Co. v. Broan Nutone, LLC, 348 F.Supp.2d 934, 937 (W.D. Tenn. 2004) (citing Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1364 (West 2004).

2

Commercial Code ("UCC"), Tenn. Code Ann. §§ 47-9-611 through 625, and seeking payment of the statutory penalty of "not less than the credit service charge plus ten percent (10%) of the principal amount of the obligation or the time-price differential plus ten percent (10%) of the cash price." Tenn Code Ann. § 47-9-625(c)(2). Plaintiff contends that Tennessee law requires all secured creditors, without regard to the debtor's status as a resident or nonresident of Tennessee, to send the debtor notice of its intent to dispose of the debtor's repossessed collateral. Defendant moves to dismiss for failure to state a claim, contending Plaintiff cannot obtain relief under Tennessee law because his contract provided that South Carolina law "will govern this transaction."

## II. STANDARD OF REVIEW

In evaluating the Complaint under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all of Plaintiff's allegations and resolve all doubts in Plaintiff's favor. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). While a complaint need not contain detailed factual allegations, the Plaintiff must provide the grounds for his entitlement to relief, and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. —, 167 L.Ed.2d 929, 940 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 (1957)). The factual allegations supplied must be enough to show a plausible right to relief. Id. at 940-942. A complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. Id. at 944; Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).

## III. ANALYSIS

A district court exercising diversity jurisdiction must apply the choice of law rules of the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Charash v. Oberlin College, 14 F.3d 291, 296 (6th Cir. 1994). "Tennessee follows the rule of *lex loci contractus*. This rule provides that a contract is presumed to be governed by the law of the

3

jurisdiction in which it was executed absent a contrary intent." Vantage Technology, LLC v. Cross, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999). Not only is the contract between Plaintiff and Defendant, which was executed in South Carolina, governed by the law of South Carolina under the rule of *lex loci contractus*, but the parties expressly agreed in their contract that "[t]he law of South Carolina . . . will govern this transaction."

Plaintiff contends that the explicit choice-of-law provision in the contract applied only to "this transaction."[3] More specifically, Plaintiff asserts that South Carolina law applied to the substantive matters of the retail contract, but not more broadly to encompass a violation of the UCC. The Court does not agree.

The parties' choice of law provision was included in a section titled "ADDITIONAL TERMS OF THIS CONTRACT" and in the first subsection under that title called "GENERAL TERMS." Following "GENERAL TERMS" and several more subsections within "ADDITIONAL TERMS OF THIS CONTRACT," the contract provided another subsection stating in pertinent part:

> REMEDIES: If you are in default on this Contract, we have all of the remedies provided by law, this Contract, and any separate personal property security agreement, real estate mortgage, or deed of trust. Before using a remedy, we will send you any notice and wait for any cure period that the law may require for that remedy. Our remedies include the following:
>
> * * *
>
> D. We may take possession of the Property by judicial process. . . . We shall have all the rights and remedies of a secured party under the applicable Uniform Commercial Code. We may sell the property and apply what we received first to our reasonable expenses and other indebtedness secured by the Property as permitted by the applicable Uniform Commercial Code.

---

[3]Plaintiff concedes that his contract involved a "consumer transaction," which is defined under either the South Carolina or Tennessee UCC as "a transaction in which (i) an individual incurs an obligation primarily for personal, family or household purposes, (ii) a security interest secures the obligation, and (iii) the collateral is held or acquired primarily for personal, family, or household purposes. The term includes consumer-goods transactions." S.C. Code Ann. § 36-9-102(a)(26); Tenn. Code Ann. § 47-9-102(a)(26).

4

Case 3:07-cv-00512   Document 43   Filed 08/13/07   Page 4 of 7 PageID #: 616

(Docket Entry No. 1, Ex. A at 5.) Thus, the parties included the remedies available to the seller as part of "this transaction" described in the contract. Those remedies included repossession through judicial process, a remedy the Defendant actually pursued. The parties expressly provided that the secured party would have all of the rights and remedies available under "the applicable Uniform Commercial Code." Thus, the structure of the contract indicates the parties intended that South Carolina law would govern remedies, as well as other terms of the contract, and would include application of the South Carolina UCC.

A case on which Plaintiff relies, Davenport v. Chrysler Credit Corp., 818 S.W.2d 23, 31 (Tenn. Ct. App. 1991), recognizes that the UCC's "drafters included the statutory penalty . . . because they believed that compensatory damages would not be a sufficient deterrent in the average consumer case." Implicit within this statement is the acknowledgment that statutory damages for failure to provide proper notice arise within the same consumer case or consumer transaction that initially formed the commercial relationship. Contrary to Plaintiff's view, statutory damages for improper notice are not divorced from the underlying consumer transaction; rather, statutory damages are a potential outgrowth of the consumer transaction. Thus, where the parties provided that South Carolina law "will govern this transaction," they intended that South Carolina law would govern any right of the consumer to claim statutory damages from the secured party for failure to give proper notice under the UCC. See Jenkins v. Hyundai Motor Financing Corp., 389 F.Supp.2d 961, 972 (S.D. Ohio 2005) (noting statutory damages are in nature of punishment imposed on secured party to ensure procedures for disposition of collateral are strictly complied with when the collateral is a consumer good).

South Carolina has adopted the same notice and penalty provisions of Article 9 of the UCC that Plaintiff seeks to enforce in this action under Tennessee law. S.C. Code Ann. §§ 36-9-613, 36-9-614, 36-9-625(c). Plaintiff could assert the same claim against the Defendant in a South Carolina

5

court, especially when the transaction bears a more reasonable relation to South Carolina than to Tennessee.[4] Plaintiff cannot pursue a nationwide class action lawsuit in South Carolina, however, because South Carolina does not allow non-residents to sue foreign corporations in its courts. Farmer v. Monsanto Corp., 579 S.E.2d 325, 328 (S.C. 2003).

All of the important events concerning the sale and repossession of Plaintiff's manufactured home occurred in South Carolina. The parties to the contract at issue agreed that South Carolina law would govern the transaction. Although Plaintiff surmises in the Complaint that Vanderbilt sent the allegedly defective notice to Plaintiff from its office in Tennessee, (Docket Entry No. 1, Complaint ¶ 18 ("Upon information and belief, the 'Notice of Private Sale' which Vanderbilt sent to Plaintiff Scott . . . is a form notice . . . sent by Vanderbilt . . . to other consumer debtors residing in Tennessee and other states"),  the notice actually sent to Plaintiff includes only contact information for Vanderbilt's Greensboro, North Carolina office. (Docket Entry No. 1, Ex. B.) There is no other allegation in the Complaint of a specific tie between Plaintiff and the State of Tennessee. Thus, the Court is drawn to but one conclusion–the filing of Plaintiff's lawsuit in Tennessee is the result of forum shopping to locate a forum in which a nationwide class action lawsuit could be pursued. Because Plaintiff's Complaint does not allege any claims for relief under applicable South Carolina law, Defendant is entitled to dismissal of the Complaint for failure to state a claim under Rule 12(b)(6). See Moses v. Business Card Express, Inc., 929 F.2d 1131, 1140 (6th Cir. 1991) (finding plaintiff failed to state any claims under Alabama law and dismissal of those claims was appropriate where parties agreed in contract that Michigan law applied); Reilly v. Alcan Aluminum Corp., 181

---

[4]The Court also does not agree with Plaintiff that this lawsuit raises a claim sounding in tort rather than contract. But even if the case involved a tort claim and even assuming there were some difference in the UCC law of Tennessee and South Carolina, which Plaintiff admits there is not, the Court would nonetheless conclude that South Carolina has the most significant relationship to the purported injury–the lack of sufficient notice. See Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992) (abandoning *lex loci delicti* for the most significant relationship test).

6

F.3d 103, 1999 WL 313879 (6th Cir. 1999) (unpublished) (affirming dismissal where complaint alleged claims under Ohio law but failed to allege claims under governing Georgia law).

## IV. CONCLUSION

By the parties' express contractual agreement, South Carolina law applies to any cause of action Plaintiff may have for statutory damages under the UCC. Plaintiff's Complaint fails to state any claim under South Carolina law. Consequently, Defendant's Motion to Dismiss (Docket Entry No. 23) the Complaint under Rule 12(b)(6) will be GRANTED and this case will be dismissed with prejudice.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE